UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                         PLAINTIFF


v.                                              CRIMINAL NO. 3:24-CR-00131-1-DJH
                                                          *Electronically Filled*


LARRY SINGLETON                                                  DEFENDANT


**SENTENCING MEMORANDUM**

The United States has received and reviewed Larry Singleton's Presentence Investigation Report (PSR). (DN. 50, Final PSR). Having found no substantial errors with the PSR, the United States has informed United States Probation there will be no objections thereto and is unaware of any unresolved objections to the PSR.

The United States is aware that Mr. Singleton will motion the Court, pursuant to 18 U.S.C. § 3553(a), for a downward variance of the advisory guideline. The United States does not intend to call any witnesses at the sentencing hearing and has discussed with counsel Mr. Singleton's potential to call background and character witnesses on his behalf.

At sentencing, scheduled for January 29, 2026, at 9:30 a.m., the United States intends to motion the Court, pursuant to U.S.S.G. § 3E1.1 (b), for an additional one-level reduction for Mr. Singleton's timely acceptance of responsibility and recommend a sentence at the low end of the advisory guideline, as determined by the Court. The United States shall make sentencing recommendations to the Court consistent with the Rule 11(c)(1)(B) plea agreement [DN 46], filed on October 2, 2025.

Restitution is not an issue and there are no identifiable victims beyond the public at large. (DN 50, PSR ¶ 25, 124, and 125).  The agreed forfeiture of the firearm and ammunition, as addressed in the plea agreement [DN. 46 ¶ 14], has been administratively completed by the ATF.

To achieve a just sentence in accordance with Title 18 U.S.C. § 3553(a), the United States acknowledges the existence of factors favoring a downward variance based upon the facts and circumstances unique to this case. Should a variance be granted, an appropriate sentence available to the Court could be an advisory guideline range of 106-117 months incarceration based upon an offense level of 21 and a criminal history category of III.  The factors in favor of a variance are acknowledged below and shall be further addressed at the sentencing hearing.

## SENTENCING FACTORS

This Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).  That section directs courts to consider the following:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)      the kinds of sentences available;

(4)      the kinds of sentence and the sentencing range established for--

(A)      the applicable category of offense committed by the applicable category of

defendant as set forth in the guidelines--

(5)      any pertinent policy statement--

(6)      the need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct; and

(7)      the need to provide restitution to any victims of the offense.

### Nature and Circumstances of the Offense

On four separate occasions during a three-week period between May and June of 2024, Mr. Singleton, a convicted felon, sold to law enforcement approximately 42 grams of substances containing a mixture of metonitazene, fentanyl, heroin, and various other noncontrolled fillers, commonly referred to as "cut". (DN. 50, PSR p.7-8, ¶ 19-21; DEA labs Exs. 44,45,46). After the second buy, law enforcement complained to Mr. Singleton of being shorted on the purchase and Mr. Singleton returned $200 of buy money to law enforcement.  (DN. 50, PSR p. 7 ¶ 19). On the last controlled buy, Mr. Singleton sold a stolen loaded firearm to law enforcement.  (Id.). There is no evidence that Mr. Singleton possessed the firearm during any of the earlier transactions and the firearm was brought to the last transaction at the request of law enforcement[1]. The small quantity and poor quality of the controlled substances together with

---

[1] Although not the stereotypical factual basis for a 924(c), pursuant Sixth Circuit case law, the facts here do support the charge. *See U.S. v. Rivera*, 502 Fed. Appx. 554(2012) (Not published) ("fact that defendant was carrying firearm for sale did not preclude finding that he carried firearm to facilitate drug transaction.").

relatively large amount of cutting agents[2] is indicative of low-level street dealing and a distributor very far downstream from the original source of supply.  Furthermore, these facts appear supportive of Mr. Singleton's claim that he is an addict dealing to support his habit.  This is acknowledged considering the USSG Guidelines measured approach to distinguishing more culpable higher level defendants from lower level ones.

Based upon these circumstances, Mr. Singleton's offense level, with acceptance of responsibility is a level 21.  (*See* Id. p.9-10¶ ¶ 36, 38,39).  In addition to this guideline, Mr. Singleton is subject to a consecutive 60-month term of imprisonment, pursuant to 18 USC § 924(C).  This advisory guideline sentence is appropriate as it reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment for the offenses.

### History and Characteristics of the Defendant

Here the nature and circumstances of the offenses together with the history and characteristics of Mr. Singleton, when viewed in their totality, may be supportive of a downward variance of the advisory guideline.  Mr. Singleton is a longtime drug addict and low-level street dealer, whose complicated criminal history has disproportionally increased his penalty in comparison to his crime[3].

Mr. Singleton is 40 years old and has been a resident of Louisville his entire life. (Id. p.

---

[2] Of the 42 grams, DEA drug labs, based upon purity, indicate a total of 1.65 grams of pure controlled substances.

[3] The complicated nature of Mr. Singleton's criminal history calculation is evidenced by the parties' inability, after consultation with US Probation, to accurately calculate his criminal history.  According to the PSR, Mr. Singleton pled guilty in case 05-CR-2598 on July 11, 2006, and was sent to prison on October 26, 2006. He was then paroled on October 31, 2007.  However, on January 17, 2007, a date after he appears to have been in "DOC" custody, he entered guilty pleas to cases 06-CR2783 and 06-CR-3686. (DN 50, pp. 13-15, ¶ ¶ 49, 51, 52.).  This anomaly is unexplained.  During plea negotiations, the United States conferred with US Probation regarding Mr. Singleton's criminal history and potential status as a Career Offender.  Based upon limited information, primarily derived from Mr. Singleton's Pretrial Service Report, it was erroneously believed that based upon timing and manner of the State's imposition of those sentences, he was <u>not</u> a Career Offender, and his likely criminal history category would be around a III.  However, no specific category was determined.  This information was provided to defense counsel.

21 ¶ 85).  He has numerous family members residing in Louisville. Mr. Singleton does not have a high school diploma or its equivalent.  According to his counsel he is illiterate.  Through court ordered evaluations, he was determined to be in the "mentally deficient range" with a full-scale IQ of between 69 and 74. (Id. p. 23, ¶ 102).  During this time, he received multiple diagnosis including, "Educable Mentally handicapped[4]," "mild mental retardation" and "conduct disorder". (Id. p. 22 ¶ 95). He was observed to have demonstrated "extremely low adaptive skills" and "an inability to retain and synthesize information as presented, which has suggested his deficits are not amenable to treatment".  (Id.).

According to his PSR, Mr. Singleton had a traumatic childhood experiencing food insecurity, housing insecurity, street violence, extreme child abuse, and very earlier exposure to drug abuse.  (Id. p. 21¶ 87).  At a very earlier age he began using alcohol and controlled substances.  (Id. p. 22-23 ¶ 97). And as an adult became a heroin addict.  (Id.).

Although Mr. Singelton has a very lengthy criminal history, there are several factors relevant to it being overstated.  First, Mr. Singleton appears to have no prior arrests, convictions, or revocations based upon any crime of violence.  (See DN. 50 PSR pp.11-21).  Despite his childhood, it does not appear that he continued the cycle of violence to which he was exposed. Clearly however, he has continued the cycle of drug abuse.  But even here, as discussed below, there are factors indicative that this history is overstated.

### The Need For The Sentence Imposed

Mr. Singleton is a drug addict and a street level drug dealer dealing in heroin and other controlled substances with a lengthy criminal history.  A term of incarceration is required to

---

[4] This diagnosis denotes that he could benefit from specialized classes, what is now referred to as special education.

5

comport with the sentencing goals of 18 U.S.C. § 3553(a).  The advisory guideline range of 262-327 months, however, is greater than necessary to comply with the purposes set forth in 3553(a). A sentencing range of 106-117, and a sentence of 106 months reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.  It provides adequate deterrence and protects the public from further crimes by Mr. Singleton.[5]

### The Kind of Sentences Available/The Kinds of Sentence and the Sentencing Established

Mr. Singleton has received 9 criminal history points for three state convictions for street level crack cocaine dealing all committed within approximately one year of one another approximately twenty years ago[6]. (*Id*. PSR p. 13-15,¶ ¶ 49,51, 52). He was 20 years old when he committed the first offense for which he received a five-year sentence.  (Id.)  Although initially probated, following a series of revocations in conjunction with the other two cases, Mr. Singleton overserved his first sentence by over six months[7] and was effectively incarcerated or on parole for almost ten years for a five-year sentence[8].  Although all the offenses were committed of separate dates, Mr. Singleton was convicted of the last two offenses on the same date of January 17, 2007.  (Id.)  More significantly however, these convictions are also what qualifies Mr. Singleton as a Career Offender and enhance his advisory guideline term of imprisonment.  (Id. P.

---

[5] The 924(c) conviction provides additional deterrence and public protection as it provides for an enhanced penalty of 25 years consecutive, should Mr. Singleton be convicted again of possessing a firearm in furtherance of a drug trafficking crime. (*See* 18 U.S.C. 924(c)(1)(C)(i)).

[6] The following year, on November 1, 2007, the crack cocaine amendment became effective reducing the crack/powder cocaine disparity.

[7] This determination is based on his service of 2,047 days (5.608 years) incarceration and does not account for any credit time or good time credit.  The PSR does not reflect any sentence credits.  Although the days were not served consecutively, this is longest period of incarceration served by Mr. Singleton. (Id. pp.11-21

[8] Under 05-CR-2598, for an offense committed in August of 2005, Mr. Singleton's five-year sentence was probated on July 11, 2006, but he was not discharged from that sentence until February 1, 2016, approximately ten years later. (Id.).

10, ¶ 37).

In addition to the 9 points, Mr. Singleton has 4 additional points for three misdemeanor cases and one felony case. (Id. 17-18¶ ¶ 58,6061,62).  Of these points, his 1 point for case 12-T-078919, Failure to Maintain Insurance, appears to over represent his criminal history as it a violation from fourteen years ago, relates solely to a traffic offense, and he was not represented by counsel. (Id.).

Based upon the conversion of the various controlled substances, Mr. Singleton is accountable for 189.13 kilograms of converted drug weight rendering a base offense level of 24.  (Id. P. 9 ¶¶ 31 and 36). With acceptance of responsibility and a criminal history category of III[9], the corresponding advisory guideline range of imprisonment is 46-57 months. (USSG Ch. 5Pt.A, Sentencing Table).  Including the consecutive 60 months for the 924(c) conviction, the range would be 106-117 months.  As calculated, this is a guideline sentence available to the Court which accounts for all of Mr. Singleton's offense conduct and criminal history and thus, compliant with 3553(a)(3) and (4).

---

[9] Counting all of Mr. Singelton's one-point offenses results in a criminal history category of III. (Id.). Counting his 9-point convictions as a 3-point group and adding 3 points for his 1-point convictions for a total of 6 points, would also result in a criminal history category of III. If the 2005 and 2006 convictions are not counted and the no insurance conviction is not counted, his criminal history category would reduce to a category II, and the advisory guideline would reduce to a range of 41-51 months. (USSG Ch. 5Pt.A).

## CONCLUSION

At the sentencing hearing, the United States will acknowledge the existence of mitigating circumstances which, in the interest of Justice, support a downward variance and request a sentence in conformance with the plea agreement [DN.46] entered on October 2, 2025.

Respectfully submitted,

KYLE G. BUMGARNER
United States Attorney

Mac Shannon
Assistant U.S. Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-5911

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Mac Shannon
Assistant United States Attorney

8