**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
*ELECTRONICALLY FILED*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | | **PLAINTIFF** |
| | ) | |
| v. | ) | **CRIMINAL NO: 3:24-CR-00131-DJH** |
| | ) | |
| **LARRY SINGLETON** | | **DEFENDANT** |

**SENTENCING MEMORANDUM**

Comes the Defendant, Larry Singleton, by his counsel, Catherine J. Kamenish, and submits this memorandum in support of his sentencing hearing which is scheduled for January 29, 2026.

**INTRODUCTION**

On October 2, 2025, Larry Singleton pled guilty to one (1) count of Intent to Distribute a mixture and substance containing metonitazene, two (2) counts of Intent to Distribute a mixture and substance containing heroin and metonitazene, one (1) count of Possession of a Firearm in Relation to Drug Trafficking and one (1) count of Felon in Possession of a Firearm. The maximum term of imprisonment for Counts 1, 2, and 3 is twenty (20) years, at least three (3) years of supervised release and a $1,000,000.00 fine. Count 4 carries a term of imprisonment of five (5) years to life, a $250,000.00 fine and not more than five (5) years of supervised release. Count 5 carries a maximum term of imprisonment of fifteen (15) years, a $250,000.00 fine and not more than three (3) years of supervised release. Restitution is not an issue in this case.

**PRESENTENCE INVESTIGATION REPORT**

Both the Unites States and Mr. Singleton have no objections to the Presentence Investigation Report (PSR).

## GUIDELINE CALCULATION

Mr. Singleton agrees with the facts as stated in the United States' Sentencing Memorandum insofar as the United States conferred with US Probation regarding Mr. Singleton's criminal history and potential status as a Career Offender during plea negotiations and that based upon a review of Mr. Singleton's pretrial report, all parties erroneously believed that Mr. Singleton was not a Career Offender and that his criminal history category would be a III.  Mr. Singleton also agrees with the guideline calculation in the United States' Sentencing Memorandum but will further request that a downward variance be granted based upon the nature of the offense and the history and characteristics of Mr. Singleton.

After the PSR was completed, the career offender enhancement was applied to Mr. Singleton pursuant to U.S.S.G. § 4B1.1, resulting in an adjusted offense level of 32 (before acceptance) and a Criminal History Category VI with a guideline advisory range of 262-327 months.  This enhancement was based on three prior felony convictions stemming from offenses that occurred in 2005 and 2006.  The first felony conviction was pursuant to Case No. 05CR2598 and was committed in August 2005.  Mr. Singleton received a 5 year probated sentence on July 11, 2006, which was later revoked.  However, he served 222 days more than his sentence required, not including any statutory good time of 131 days he may haveearned for every year he served.  The 2005 sentence was not discharged by the Department of Corrections until February 1, 2016, nearly 10 years after the initial conviction.  Mr. Singleton was sentenced to 5 years on each of his 2006 drug trafficking convictions.

Mr. Singleton acknowledges that these three convictions technically satisfy the career offender criteria, but believes that its application was not designed for defendants like Mr. Singleton

because it produces a sentence that is much greater than necessary to achieve the purposes of sentencing.

The purpose of the career offender enhancement was to provide enhanced punishment for defendants who committed a crime of violence or drug trafficking after two or more convictions for the same crimes. However, the U.S. Sentencing Commission has recognized that in many cases the career offender enhancement overstates the seriousness of a defendants' criminal history and produces sentences that are too severe. Specifically, the Commission has found that career offender sentences are too severe for many offenders and result in unwarranted disparities because they treat all career offenders the same regardless of any variations in their criminal histories. It also prevents the Court from considering other relevant offender characteristics.

The Commission recommended that Congress narrow the career offender definition to focus on offenders with violent criminal histories rather than applying it broadly to all repeat drug offenders. While Congress has not acted on this recommendation, the Commission's findings underscore that the career offender enhancement produces unjust results in cases just like this one.

The three convictions that trigger the career offender enhancement in Mr. Singleton's case involve trafficking in cocaine offenses that occurred in 2005 and 2006, when Mr. Singleton was age 20 and 21 respectively. None of these convictions involved weapons, violence or threats and they do not appear to involve any substantial quantity of drugs. They are clearly not the type of convictions that justify the extreme sentence that Mr. Singleton could face if the Court were to determine that he qualifies as a career offender.

Mr. Singleton's entire criminal history consists of drug possession, drug trafficking and other related offenses such as felon in possession of a firearm, gambling and loitering. He clearly has no record of violent offenses such as robbery, burglary of an occupied dwelling, sexual assault,

domestic violence or any other crime involving harm to a person or a child.  Mr. Singleton's criminal history distinguishes him from those violent repeat offenders who do pose a serious risk of physical harm to the community.   His repeated low-level drug offenses suggest that he has struggled with drug addiction and made poor choices, but not that he poses an unusually high risk of serious harm to the community.

Mr. Singleton's requests a downward departure because his criminal history points over represent the significance of his criminal history for the reasons stated above.

**SENTENCING FACTORS**

The Court is required to apply the provisions of 18 § U.S.C. § 3553(a) in order to impose a sentence that is sufficient, but not greater than necessary in order to accomplish the goals of sentencing.  Those goals are to achieve just punishment, reflect the seriousness of the offense, promote respect for the law, deter the Defendant and others from future crime, protect the public, and provide education and treatment, when needed, in the most effective manner.  In determining this sentence, the Court must consider the nature of the offense, the history and characteristics of the Defendant, the sentencing guidelines and policy statements, the need to avoid unwarranted disparities among similarly situated defendants, and the need to provide restitution (if applicable).  See 18 U.S.C. § 3553(a)(1,3-7).

1. **Nature and Circumstances of the Offense**

Larry Singleton sold approximately 42 grams of a mixture of metonitazene, fentanyl and heroin that had been cut to an undercover law enforcement officer.  All of the buys occurred during a three week period between May and June 2024.  Mr. Singleton also sold the undercover officer a stolen handgun that he had found.  Mr. Singleton agrees with the United States that there is no evidence that he possessed the firearm during any of the transactions and that the

firearm was only brought to the last transaction because the undercover officer kept requesting it.

Mr. Singleton is primarily a drug addict who engaged in ancillary drug trafficking to support his drug addiction after he lost his job.  There is no evidence to suggest that Mr. Singleton engaged in drug trafficking to earn large profits or support an extravagant lifestyle.  For example, neither Mr. Singleton or his girlfriend owned a vehicle and they was living in a fairly run down house that his father had left him.  There were many occasions where they struggled to pay their utilities and other household bills.  Mr. Singleton had no cash or expensive jewelry on him at the time of his arrest, nor was any cash, jewelry or other valuable assets found at his residence.  None of the facts of this case indicate that Mr. Singleton was anything other than a low level drug dealer.

### 2. <u>**History and Characteristics of the Defendant**</u>

Larry Singleton is forty (40) years old.  He cannot read or write and has significant cognitive deficits.  Prior testing shows that he has a verbal IQ of 60 and a full scale IQ of 69.  Mr. Singleton's intellectual functioning is in the impaired range.  Prior psychological testing confirms low self-esteem and immature insight and judgement.

Mr. Singleton had a horrible childhood.  He was physically abused and beaten by his mother and left to fend for himself as a young child in one of Louisville's worst housing projects.  Mr. Singleton witnessed things that no child should ever see.  He had no father figure growing up.  His mother did not work and reportedly lived of Mr. Singleton's disability check of $533.00 per month. When his mother was around, she never cooked him dinner or made sure he had a bath and clean clothes to wear to school.  Instead, Mr. Singleton was given food stamps to buy his own food and forced to wear clothes that were to big for him, which made him the subject of ridicule at school.

A psychological report dated 11/11/1998, states "[T]he boy described his mother as "uninvolved" and "rarely concerned about his friends, school success or general welfare."

No one bothered to make sure Mr. Singleton had a place to sleep.  No one ever bothered to check that his homework was turned in or checked to see if he even had homework.  No one came to his Christmas programs or other school events.  The fact is that no one bothered or cared for Mr. Singleton as a child.  During an interview Mr. Singleton, who was 15 at the time, stated he had no one to talk to and "every minute he is just about at the point of crying".  Dennis Buchholtz, Ph.D., Page 2 of Competency Report.  Another mental health expert found that Mr. Singleton suffered from "psychological turmoil and severe social maladjustment, conditions that have been with him most of his life".  (Edelson & Associates Psychological Evaluation dated 11/10/1980).  The same examiner also found him to be substantially impaired cognitively (Defective IQ) and behaviorally in terms of the capacity to cope with the ordinary demands of life.

Mr. Singleton was also let down by the school system that was supposed to help him.  He was repeatedly passed on to the next grade even though he couldn't read a line out of a book or do a simple math problem.  In fact his JSPS student records reflect that he was advanced to the next grade because of his size, rather than his ability to perform at that particular grade level.  When Mr. Singleton was in the 9th grade, it was noted that he could not write a sentence.  At the age of 16, he was found to be roughly equivalent to a child age 7 years and 7 months.  (David Finke, Ph.D. 4/15/2002 report)  It is hard to believe that not one family member noticed that this child could not read or write a simple sentence and perhaps he needed some additional help.  School records reviewed by the undersigned do not reflect any parent or guardian participation in  Mr. Singleton's academic progress or evidence any involvement by his mother at parent-teacher conferences.

**3.** **The Need for the Sentence Imposed to Reflect the Seriousness of
the Offense and to Afford Adequate Deterrence to Future Crimes**

Mr. Singleton acknowledges and understands that he must be punished for his crimes.
However, he clearly is not the type of drug dealer we typically see in Federal Court.  The
transactions that Mr. Singleton was charged with involved relatively small quantities of narcotics
which were sold on the street and during a short period of time.

There is no evidence to suggest that Mr. Singleton recruited, supervised, or directed any
other participants.  To the contrary, it is more likely that Mr. Singleton was taken advantage of by
other people due to his low IQ and diminished level of comprehension.  Likewise, there is no
evidence that he ever maintained or managed stash houses, maintained drug ledgers, or controlled
inventory.  Mr. Singleton did not possess any firearms during any of the transactions and he did not
threaten anyone.  He did not employ sophisticated trafficking methods used in most large scale drug
organizations such as coded communications, money laundering, false identification or complex
logistics.  In this case, all the transactions were straightforward face to face exchanges involving the
same person as opposed to transactions involving multiple individuals.   Finally, there is evidence
to suggest that Mr. Singleton never received anything more than enough money to support his own
personal drug addiction.

A sentence of 60 months will give Mr. Singleton sufficient time and opportunity to seek
the treatment that he needs for his drug addiction.  It will serve as a potent deterrent to him
especially since he is aware that he could be facing a mandatory minimum of ten years or more if
he were to possess a firearm in the future.  A 60 month sentence will protect the public for the
period of time that Mr. Singleton is incarcerated and a five year term of supervised release will
provide additional protection as well as the structure that Mr. Singleton needs.

Lastly, Mr. Singleton has a home to come back to, three children that love him and a supportive and strong girlfriend that can offer him spiritual and emotional guidance so he can have a productive and law-abiding future when he is released back into our community.

### CONCLUSION

In sentencing, the Court must consider all of the good and bad in Mr. Singleton's life and impose a sentence that complies with the four stated purposes of sentencing. However, *"the punishment should fit the offender and not merely the crime."* See Williams v. New York, 337 U.S. 241, 247 (1949). In this case, the offender is a 40 year old mentally retarded man who has been found incompetent in the past. He is a child-like, low functioning drug dealer who made just enough money to pay for his own drug habit.

Mr. Singleton respectfully requests that the Court vary from the career offender calculation under 18 U.S.C. 3553(a) for all the reasons discussed above. Sentencing Mr. Singleton to a term of years comparable to what an organizer or leader may receive will not promote respect for the law. Rather, it will merely create the perception of injustice and a loss of faith in the criminal justice system.

Mr. Singleton also respectfully requests that the Court grant a downward variance based upon his lack of parental guidance growing up, diminished capacity, mental and emotional condition, immaturity, current family ties and ongoing responsibility to his children and acceptance of responsibility. A sentence of 60 months imprisonment followed by 5 years of supervised release provides a realistic path to Mr. Singleton''s successful reentry into the community and reunification with his children and is consistent with the recommendations of the Sentencing Commission regarding over-application of career offender guidelines.

Respectfully submitted,

/s/ Catherine J. Kamenish
Catherine J. Kamenish
914 Lily Creek Road
Louisville, Kentucky 40243
(502) 742-0040
ckamenish@gmail.com
KBA No. 83103

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was electronically filed on January 27, 2026, through the CM/ECF filing system, which will send a notice of electronic filing to Hon. Mac Shannon, Assistant United States Attorney.

/s/ Catherine J. Kamenish
Catherine J. Kamenish